UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

-against- S1 25 Cr. 484 (DLC)

FELIX CUEVAS,

Defendant.
----------------------------------------------------------X

**SENTENCING MEMORANDUM ON BEHALF OF FELIX CUEVAS**

Gilbert S. Bayonne, Esq.
The Bayonne Firm
*Attorney for Defendant, Felix Cuevas*
1850 Amsterdam Avenue
New York, New York 10031
Tel.: (929) 333-6497

Philip H. Pierre, Esq.
PHP LAW PLLC
*Attorney for Defendant, Felix Cuevas*
1850 Amsterdam Avenue
New York, New York 10031
Tel.: (212) 202-0820

Dated: November 6, 2026
New York, New York

## I. Preliminary Statement

We respectfully request a sentence of ninety-six months' imprisonment, a punishment that is sufficient, but not greater than necessary, to fulfill the purposes of sentencing under 18 U.S.C. § 3553(a). Mr. Cuevas accepts responsibility for his conduct and recognizes the seriousness of his offense. Eight years in prison gives full weight to that responsibility while accounting for the circumstances that bear directly on an appropriate sentence: his individual role and culpability, limited criminal record, traumatic personal history, and demonstrated capacity to respond to treatment.

The Presentence Investigation Report ("PSR") calculates an advisory range of 360 to 480 months. That range begins with a death-results base offense level of 38 and adds seven levels for weapons, vulnerability, and managerial responsibility before crediting acceptance of responsibility. PSR ¶¶ 136–46, 216. The resulting calculation places extraordinary weight on the conspiracy's collective consequences. The Court's assessment must also give meaningful weight to Mr. Cuevas's own conduct and circumstances. The trial record permits consequential distinctions concerning his personal involvement, and his history reveals a life shaped by childhood abuse and neglect, profound loss, mental health difficulties, and addiction. His documented response to treatment offers concrete evidence of his capacity for change. Together, these circumstances call for a substantial downward variance.[1]

Probation independently recognizes that the advisory range exceeds the punishment appropriate here. It recommends 200 months, citing childhood abuse and neglect, significant mental health difficulties, extensive addiction, treatment efforts, and limited criminal history. *See* PSR, Sentencing Recommendation, at 45–48. That assessment confirms the substantial mitigating force of this record. We respectfully submit that the evidence developed below supports a greater variance and

---

[1] *See United States v. Bannister*, 786 F. Supp. 2d 617, 688–89 (E.D.N.Y. 2011) (considering childhood adversity and the absence of parental support and meaningful opportunities in assessing the defendants' individual circumstances at sentencing).

a sentence of ninety-six months. Such a sentence would exact a serious penalty, provide just punishment, afford adequate deterrence, and protect the public, while preserving a meaningful opportunity for continued treatment and rehabilitation. On this record, a longer term of imprisonment would be greater than necessary to accomplish those purposes.

## II. The Offense and Advisory Guidelines

On July 28, 2026, Mr. Cuevas pleaded guilty to a lesser-included offense of Count One, conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). The offense carries a five-year mandatory minimum and a forty-year maximum. PSR ¶ 1; *id.* ¶ 215. The plea removed the twenty-year mandatory minimum associated with the original charge. *Id.* ¶ 217.

The PSR describes Mr. Cuevas's participation beginning in approximately 2024. PSR ¶¶ 73–75. His two New York County convictions arise from the August 2024 and January 2025 arrests described in this case; Probation treats both as relevant conduct to the federal offense. *Id.* ¶¶ 148–49.

The PSR, applying the 2025 Guidelines Manual, calculates a base offense level of 38 under U.S.S.G. § 2D1.1(a)(2), a two-level weapon enhancement, a two-level enhancement for involving unusually vulnerable individuals, and a three-level managerial enhancement. After a three-level reduction for acceptance of responsibility, the total offense level is 42. Mr. Cuevas has zero criminal history points and is in Category I. PSR ¶¶ 135–50. Subject to the statutory maximum, the reported range is 360 to 480 months. *Id.* ¶ 216. The defense seeks a variance under § 3553(a), while preserving the factual objection to personal weapon possession discussed below.

## III. Personal Background and History

### a. Childhood and family history

Felix Cuevas's childhood included abuse inside his home, violence outside it, and the absence of dependable parental guidance. He grew up in crowded Bronx public housing in a household receiving food assistance. His parents separated when he was seven, and his father was incarcerated

from approximately ages eight through eleven. PSR ¶¶ 156, 159–60. He remembers his father buying him chocolate milk and attending baseball games, but also severe physical punishment, intoxication, and cocaine use in the home. After his father returned from prison, the substance abuse continued. *Id.* ¶ 160.

His mother provided basic necessities but also inflicted severe abuse. He reported that she broke plates of food over his head and forced him to kneel on a cheese grater while she struck him. He described living with her as "living in a prison." *Id.* ¶ 161. His stepfather supplied financial support, but Felix also recalled his cocaine use, abuse of Felix's brother, and an incident in which he held a knife while staring at that brother. *Id.* ¶ 162.

When older teenagers attacked Felix outside school with metal rods and stripped him of his clothing, he recalled coughing up blood. His mother's response was that he was a "grown ass man" who needed to handle it himself. *Id.* ¶ 161. A child who had been beaten and humiliated was left responsible for confronting the threat. He also described his school commute as dangerous. *Id.* ¶ 194.

His Young Adult Opportunity Program ("YAOP") application described his Bronx community as marked by disinvestment, poverty, and persistent violence.[2] *Id.* ¶ 159. His early academic promise gave way to missed classes and drug use. He recalled A's and B's in elementary school; records later confirm that he left high school during the ninth grade. *Id.* ¶¶ 194–97. From ages nineteen through twenty-two, he was homeless, sleeping on the streets and staying with friends whenever possible. *Id.* ¶ 166. He entered adulthood without a diploma, stable housing, or consistent parental guidance.

Profound loss compounded those circumstances. His son Kyon died approximately one month after birth, when Felix was fifteen. *Id.* ¶ 175. His brother Jeffrey died of an overdose, and his

[2] Mr. Cuevas applied to YAOP because he fell within the program's eligible age range. His application was denied because participation is limited to defendants who remain at liberty during the pendency of their cases.

brother Antonio has been missing since 2019. *Id.* ¶ 157. His cousin Danny died in 2019 as well. *Id.* ¶ 172. His cousin Yanibel Garcia, who grew up alongside Felix and Danny, describes the deep effect Danny's death had on him. *See*, Exhibit A, Letter from Yanibel Garcia to Hon. Denise L. Cote 2 (Oct. 17, 2026).

**B. Mental health history**

[redacted].

From approximately November or December 2024 through February 2025, he voluntarily participated in mental health and anger management programming through CASES. *Id.* ¶ 174. At the time of the presentence investigation, he reported requesting psychiatric care at Hudson County Correctional Facility without yet receiving it. He remains interested in treatment. *Id.* ¶¶ 177–78.

**C. Substance use and treatment history**

Mr. Cuevas's substance use began during his childhood. He first used marijuana in 2010, at approximately eleven, and alcohol in 2012, at approximately thirteen. *Id.* ¶¶ 179, 187. He reported beginning nonprescribed Adderall in 2016; Percocet and codeine-based cough syrup in 2019; methamphetamine in 2021; Xanax in 2022; and heroin in 2023. He described dependence on multiple substances, including pills containing fentanyl. *Id.* ¶¶ 180–85. After a scooter accident, he used nonprescribed pills to manage leg pain. *Id.* ¶ 170.

He has also repeatedly sought help. He reported completing a thirty-day inpatient drug and alcohol program at Cornerstone in June or July of either 2024 or 2025. *Id.* ¶ 188. He attended individual and group substance use sessions through CASES from late 2024 through February 2025, ending after a prior arrest. *Id.* ¶ 190. He also participated in state-court alternative-to-incarceration treatment, which

the federal arrest interrupted. *Id.* ¶ 189. The August 2024 and January 2025 arrests described in the detention letter are the same conduct underlying his two state convictions; the PSR treats those convictions as relevant conduct and assigns no criminal history points. *Id.* ¶¶ 148–49.

Mr. Cuevas's treatment record at Care Counseling Center documents meaningful progress toward recovery. Records establish attendance from August 11 through October 29, 2025, including fifty-five group sessions, twelve individual sessions, and negative results on every toxicology test. *Id.* ¶ 191. The clinical supervisor described him as receptive to guidance, constructive with peers, focused on goals, and willing to improve himself. *Id.* Although the PSR describes the program as uncompleted and records discharge for loss of contact after October 29, it also notes that he was arrested in this federal case the following day, October 30, 2025. *Id.* At the time of that arrest, Mr. Cuevas was taking sustained steps toward recovery through court-ordered treatment arising from the same two state arrests the PSR treats as relevant conduct here, a course of progress demonstrated by consistent participation, engagement with treatment, and negative toxicology results. *Id.* ¶¶ 148–49, 191.

James Magee, his state-court attorney, supplies an independent firsthand assessment. He represented Cuevas when he pleaded guilty and entered alcohol treatment, and he describes him as "one of the genuine success stories of my practice." *See*, Exhibit A, Letter from James W. Magee to Hon. Denise L. Cote 1 (Oct. 28, 2026). He states that he has never before written such a letter in twenty years of practice. Drawing on his own recovery, he explains that he personally observed Cuevas undertake the work and accountability sobriety requires. *Id.*

Mr. Cuevas told Probation that maintaining sobriety is a future goal and expressed interest in continued substance use treatment. At the presentence interview, he reported that he was not enrolled in a drug or alcohol treatment program at Hudson County. PSR ¶ 192.

**D. Education, employment and adjustment to custody**

Before his federal arrest, Mr. Cuevas completed OSHA certifications and entered the intake process for the FDNY's EMT program. *Id.* ¶ 209. His work history includes warehouse, retail, mechanical, and personal-shopping jobs. *Id.* ¶¶ 201–08.

At Hudson County, he has continued to pursue available opportunities. Institutional records document more than eighty hours of educational coursework, including Anger Management, Basic Spanish Skills, Budgeting, Drug-Free Workplace, and Suicide Prevention. *Id.* ¶ 23. Additional enrollments include Active Recovery with The Phoenix, An Introductory Guide to Narcotics Anonymous, Budgeting: Operating Budgets, Business Problem Solving: Problem-Solving Teams, and Career Experiences. *Id.* ¶¶ 23, 193. He reported enrolling in pre-GED courses and intends to earn his GED. *Id.* ¶¶ 193, 199. The facility reported no disciplinary infractions. *Id.* ¶ 23.

**E. Family relationships and community support**

His sister Berliz describes Felix encouraging her education, discussing her college choices, and urging her to persist when work or other interests became difficult. She also recalls the family's concern about his drinking and her pride when he began pursuing sobriety. *See*, Exhibit A, Letter from Berliz Florian to Hon. Denise L. Cote 1–2 (Oct. 18, 2026).

His cousin Grace Artiles describes a particularly meaningful act of restraint. In 2023, after learning that she was in an abusive relationship, Felix helped her develop a plan to leave safely with her daughter. She states that, despite threats against his life, he remained calm and did not respond with violence or escalate the conflict. *Id.*, Letter from Grace Artiles to Hon. Denise L. Cote 1–2 (Oct. 18, 2026).

Alex Carrillo, a lifelong friend, recalls seeing him offer food to people experiencing homelessness and comfort upset children. *Id.,* Letter from Alex Carrillo to Hon. Denise L. Cote 1 (Oct. 30, 2026). Flora Amador describes his help caring for his younger sisters, including taking them to school. *Id.,* Letter from Flora Amador to Hon. Denise L. Cote 1 (Oct. 17, 2026). His partner also

described him as helpful and caring, generally corroborated his history, and remains supportive. PSR ¶ 167. Before his arrest, he lived with her and helped support her young son. *Id.* ¶¶ 165–66.

## IV. The Section 3553(a) Factors Support a Sentence of Ninety-Six Months

The Guidelines supply the starting point, followed by an individualized assessment of all the statutory factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Court must impose a sentence sufficient, but not greater than necessary, to accomplish the purposes of sentencing. 18 U.S.C. § 3553(a). Here, a downward variance is supported by the relationship between the base offense level and Mr. Cuevas's individual conduct, his history and treatment needs, and the evidence that he can respond constructively to supervision and care.

### A. The lesser included plea and the effect of the death results base level

The Government agreed to a plea under 21 U.S.C. § 841(b)(1)(B), carrying a five-year minimum and forty-year maximum, rather than the originally charged offense with its twenty-year mandatory minimum. PSR ¶¶ 1, 215, 217. That decision is significant to the Court's assessment of an appropriate sentence even though Mr. Cuevas stipulated to the death-results calculation. The defense honors that stipulation and seeks a variance based on the extent to which the resulting range measures his individual culpability.

The base offense level of 38 is driven by the stipulated overdose consequences. PSR ¶ 136. Without that death-results starting point, a drug-quantity calculation would instead require application of the Drug Quantity Table to the quantities properly attributable to him, including relevant conduct and any applicable conversion of different drugs. See U.S.S.G. §§ 1B1.3, 2D1.1(c) & cmt. n.8 (2025). The lesser-included plea does not, standing alone, establish those quantities. It does permit the Court to examine the substantial effect of the death-results provision as part of its variance analysis.

An illustration using the threshold quantity associated with a § 841(b)(1)(B) fentanyl or crack offense shows that effect. Forty grams of fentanyl, considered alone, or twenty-eight grams of cocaine base, considered alone, corresponds to base offense level 24. U.S.S.G. § 2D1.1(c)(8) (2025). Retaining

every aggravating adjustment in the PSR, two levels for weapons, two for vulnerability, and three for managerial responsibility, and subtracting three levels for acceptance produces total offense level of 28:

24 (drug quantity base offense level)

+ 2 (weapon enhancement)

+ 2 (vulnerability enhancement)

+ 3 (managerial role enhancement)

– 3 (acceptance of responsibility)

28 (Offense Level)

At Criminal History Category I, the resulting range is 78 to 97 months. *Id.* ch. 5, pt. A. The five-year mandatory minimum would not alter that range. The requested ninety-six months falls near its upper end.

This threshold-based comparison is offered as a point of reference for the Court's analysis under § 3553(a), rather than as a finding that level 24 is Mr. Cuevas's actual quantity-based offense level. The PSR states that the Government had not provided an individualized attributable drug amount. PSR ¶ 118. Greater quantities or the combined converted weight of multiple drugs could yield a higher base level. The defense therefore does not contend that removing the death-results provision automatically establishes a range of 78 to 97 months. The comparison demonstrates why the Court should evaluate the severity of the stipulated starting point alongside the particular distribution evidence and the full mitigation record, rather than treat the 360-to-480-month range as the sole measure of a sufficient sentence.

**B. Mr. Cuevas's Relative Culpability Supports a Substantial Downward Variance**

The loss of life in this case is profound, and nothing in this submission diminishes the victims' lives or their families' grief. The question under § 3553(a) is what punishment is appropriate for Mr.

Cuevas in light of his own conduct and relative culpability. His connection to the drugs involved in these incidents bears directly on that assessment.

The record does not place Mr. Cuevas in the chain of distribution to Victim-1. The PSR traces those drugs to a separate distribution chain without identifying him as a supplier or intermediary. PSR ¶¶ 34–37. As to Victim-2, the Government has expressly advised defense counsel that Mr. Cuevas was not in the chain of distribution. Likewise, the PSR attributes the drugs involved in Victim-3's November 11 overdose to a sale by another defendant, without identifying Mr. Cuevas as a participant in that transaction. *Id.* ¶ 85.

These distinctions matter to a fair assessment of punishment. Mr. Cuevas accepts responsibility for his offense, and the defense recognizes the stipulated Guidelines calculation. But the Court should give substantial weight to the absence of an identified role in these particular distribution chains when assessing his individual culpability. A sentence should account for the seriousness of the offense while distinguishing among defendants according to their conduct and connection to its consequences. Viewed alongside his personal history and treatment record, those distinctions support the requested sentence of ninety-six months.

### C. The personal weapon allegation remains disputed

The defense preserves its objection to PSR paragraphs 76, 118, and 137 insofar as they attribute personal weapon possession to Mr. Cuevas. The PSR's footnotes record counsel's representation that the Government confirmed it lacked evidence establishing personal possession and that the enhancement rested on reasonably foreseeable possession by others. PSR ¶ 76 n.1; *id.* ¶ 118 n.5; *id.* ¶ 137 n.6. Probation retained the allegation with those qualifications, leaving the objection unresolved. PSR add. at 43.

The PSR identifies no specific incident in which he assaulted or threatened someone in furtherance of this conspiracy. The defense accordingly asks the Court to distinguish the stipulated enhancement from a finding that he personally armed himself or used violence to advance the offense.

### D. Mr. Cuevas's History of Trauma and Deprivation Warrants Substantial Weight Under § 3553(a)

Mr. Cuevas entered adulthood carrying burdens that began long before this offense. His childhood included severe parental abuse, exposure to substance use, his father's incarceration, and the absence of dependable protection. The adults responsible for his safety repeatedly failed to provide it. His education deteriorated, and he reached adulthood without a diploma or stable housing. From ages nineteen through twenty-two, he was homeless, sleeping on the streets and staying with friends whenever possible. PSR ¶¶ 159–66, 194–97. Further losses compounded that instability: the death of his infant son, his brother's fatal overdose, another brother's disappearance, and his cousin's death. *Id.* ¶¶ 157, 172, 175. These experiences deserve substantial weight in determining the punishment necessary for this individual.

The significance of this history lies in its cumulative force. Poverty, violence, parental addiction, abuse, interrupted education, and homelessness repeatedly undermined the stability and guidance Mr. Cuevas needed to mature. His early academic promise gave way to a struggle for basic security. He lacked consistent access to the protection, encouragement, and care that might have helped him confront those difficulties before they deepened into adulthood. Section 3553(a)(1) calls for an assessment that gives these circumstances meaningful weight alongside his conduct.

Judge Jack B. Weinstein examined this cycle of deprivation and incarceration in *United States v. Bannister*, 786 F. Supp. 2d 617, 653–54, 688–89 (E.D.N.Y. 2011) (discussing the intergenerational consequences of parental incarceration, including family instability, diminished opportunities, and increased risks of drug involvement and incarceration, and explaining how childhood deprivation and the absence of parental support bear on an individualized sentence). His analysis is especially relevant here. Mr. Cuevas experienced his father's incarceration as a child, substance use within his family, and repeated failures of adult protection. The Court should consider how those conditions shaped his development

and whether decades of imprisonment are necessary in light of his capacity to respond to treatment and support.

Despite that history, Mr. Cuevas retained the capacity to care for others and exercise restraint. Grace Artiles describes his helping her leave an abusive relationship safely with her daughter, remaining calm despite threats against him. His sister recalls his encouragement of her education and his efforts to help her persevere. *See* Ex. A, Artiles Letter 1–2; Florian Letter 1–2. These accounts reveal strengths that survived years of instability and can support a lawful future. Considered together with his documented treatment progress, they support a sentence of ninety-six months that imposes substantial punishment while preserving a meaningful opportunity to build on that progress.

## E. His treatment record and conduct in custody support continued rehabilitation

The record of Care Counseling attendance and toxicology results gives the Court objective evidence that Mr. Cuevas can engage with treatment and sustain sobriety over a documented period. PSR ¶ 191. Mr. Magee's firsthand observations reinforce that evidence. His coursework and absence of recorded disciplinary infractions at Hudson County demonstrate further constructive effort. *Id.* ¶¶ 23, 193. This information supports the requested variance because they bear on his history, his ability to respond to supervision, and the need for deterrence and protection of the public. *See Pepper v. United States*, 562 U.S. 476, 491–93 (2011).

[redacted] We ask the Court to recommend timely evaluation and clinically appropriate mental health and substance use services during incarceration, followed by continuity of treatment in the community. The completed educational courses complement that care but do not replace it.

**F. Probation independently recognizes the basis for a substantial variance**

Probation recommends 200 months, more than thirteen years below the bottom of the advisory range. PSR, Sentencing Recommendation, at 45, 47–48. Its assessment expressly accounts for the scale of the conspiracy, Mr. Cuevas's supervisory role, the overdose consequences, and his continued involvement after arrests. *Id.* at 46–47. It nevertheless finds substantial mitigation in his traumatic childhood, mental health and substance use histories, treatment efforts, and limited criminal record. *Id.* at 47. Paragraph 232 separately identifies parental neglect and abuse, the loss of a child, extensive substance use, and suicide attempts as reasons a non-Guidelines sentence may be appropriate.

The Probation Department's recommendation does not establish the necessary extent of the variance. It confirms that individualized considerations substantially alter the assessment suggested by the guidelines range. We ask the Court to give additional weight to the documented treatment response, the observations of state-court counsel and family, and the distinctions in the overdose evidence. Together, those considerations support ninety-six months.

**H. Ninety-six months provides sufficient punishment and deterrence**

Eight years is a substantial deprivation of liberty for a twenty-seven-year-old who has no criminal history points and no documented history of serving a substantial custodial sentence. PSR ¶¶ 150, 155; *id.*, Sentencing Recommendation, at 47. It exceeds the mandatory minimum by three years, recognizes his conduct, and provides a sufficient but not greater than necessary punishment for participating in a conspiracy. It also gives substantial effect to general and specific deterrence without assuming that decades of additional imprisonment are necessary for this individual.

His response to counseling, negative drug tests, constructive coursework, and institutional record provide reasons to conclude that an eight-year sentence, followed by supervision and continued care, can protect the public and reinforce a lawful path.

The request for treatment is likewise specific. We ask the Court to recommend psychiatric evaluation and clinically appropriate care, assessment for suitable Bureau of Prisons substance use programming, and access to GED and vocational opportunities. The defense also requests continued mental health and substance use treatment during supervised release. Section 3553(a)(2)(D) supports attention to how those needs can be addressed most effectively.

## V. Conclusion

For these reasons, we respectfully request ninety-six months' imprisonment. Mr. Cuevas cannot undo the harm associated with the conspiracy he joined. He can accept punishment and continue the work necessary to return to his family and community as a sober, stable, and law-abiding person. The record supports a sentence that requires both.

Respectfully submitted,

/s/ Gilbert S. Bayonne
Gilbert S. Bayonne
The Bayonne Firm
1850 Amsterdam Avenue
New York, New York 10031
(929) 333-6497
*Counsel for Felix Cuevas*

# EXHIBIT A

Alex Carrillo
4601 SW 32nd Dr West Park, FL 33023

October 30, 2026

The Honorable Denise L. Cote

United States District Judge

Southern District of New York

500 Pearl Street

New York, NY 10007

RE: United States v. Felix Cuevas, 25 CR 484 (DLC)

Dear Judge Cote,

My name is Alex Carrillo, and I have known Felix Amador for practically my entire life. We grew up together and have always shared a bond that feels more like family than friendship. I consider him a cousin and love him like a brother. Growing up, we spent countless days and nights together at his older cousin's house, where we would have sleepovers, pretend to be professional wrestlers, play with toys and video games, and spend hours playing basketball. Throughout our teenage years and into adulthood, Felix continued to be someone I could count on. During times when I was going through personal struggles, he was there to help me regain perspective and get back on track.

I have always known Felix to be a genuine, caring, and generous person who treats others with respect and kindness. I have personally witnessed his compassion toward others, including offering food to individuals experiencing homelessness and going out of his way to make a crying or upset child smile by being playful and funny. These moments reflect the kind of person I have known Felix to be throughout our lives.

I sincerely believe that Felix deserves an opportunity for a second chance. He has people who genuinely love, care about, and miss him, and his absence has been deeply felt by his friends and family. I respectfully ask that you consider the person I have known for so many years when making your decision. Thank you for taking the time to read my letter and consider my perspective.

Respectfully,

Alex Carrillo

Alex Carrillo
4601 SW 32nd Dr West Park, FL 33023

October 30, 2026

The Honorable Denise L. Cote

United States District Judge

Southern District of New York

500 Pearl Street

New York, NY 10007

RE: United States v. Felix Cuevas, 25 CR 484 (DLC)

Dear Judge Cote,

My name is Alex Carrillo, and I have known Felix Amador for practically my entire life. We grew up together and have always shared a bond that feels more like family than friendship. I consider him a cousin and love him like a brother. Growing up, we spent countless days and nights together at his older cousin’s house, where we would have sleepovers, pretend to be professional wrestlers, play with toys and video games, and spend hours playing basketball. Throughout our teenage years and into adulthood, Felix continued to be someone I could count on. During times when I was going through personal struggles, he was there to help me regain perspective and get back on track.

I have always known Felix to be a genuine, caring, and generous person who treats others with respect and kindness. I have personally witnessed his compassion toward others, including offering food to individuals experiencing homelessness and going out of his way to make a crying or upset child smile by being playful and funny. These moments reflect the kind of person I have known Felix to be throughout our lives.

I sincerely believe that Felix deserves an opportunity for a second chance. He has people who genuinely love, care about, and miss him, and his absence has been deeply felt by his friends and family. I respectfully ask that you consider the person I have known for so many years when making your decision. Thank you for taking the time to read my letter and consider my perspective.

Respectfully,

Alex Carrillo

Amani Garcia
2104 Crotona pkwy Apt 2D Bronx, NY, 10460
October 19,2026

The Honorable Denise L. cote
United States District Judge
Southern District of New York
500 pearl street New York, NY 10007

RE: United states v. Felix Cuevas , 25 CR 484(DLC)

Dear Judge cote,

My name is Amani Garcia and I am Felix's cousin in law. I wanted to write this letter because I have personally seen Felix working hard to make changes in his life, and I want people to understand that he was genuinely trying to move in a better direction. I remember seeing him that he was going to start a new job and begin taking steps toward getting his life on the right path. Seeing him work hard and try to build something better for himself meant something to me because I could see that he was making an effort to change his life, and circumstances to work towards a better future. He is someone who cares about his family and the people around him. He is hardworking, caring, protective of the people he loves, and willing to help others before himself. To me, he is more than the difficult situation he is facing right now. He is a person with goals, potential, and a future that I truly hope he still gets the opportunity to work towards. It hurts to see someone who was trying to make positive changes face a moment like this.some people in life who have been through so much throughout their childhood that carry all that trauma with them do make mistakes in life and it can make life take unexpected turns, and I understand that there are things we all have to learn from. I am not saying that anyone is perfect, but I do believe that people can grow from their experiences and make different choices moving forward. I believe he deserves the opportunity to show that the hard work and changes I saw him making were only the beginning of what he can accomplish.

One thing that gives me hope is knowing that he has a family who love him and are willing to support him. If he is given another chance, he will have people beside him who want to see him succeed and who are willing to help him stay focused on building a better life. He will not have to do it all alone. With encouragement, guidance, accountability, and the support of his family, I truly believe he can continue working toward the future he had started building for himself.

I want to see him get back to working hard, reaching his goals, and making his family proud and him being the loving and caring person we know him to be. I want him to have the chance to keep growing into the person he was working so hard to become. I believe the effort he had already started putting into his life matters, and I hope he gets the opportunity to continue that progress.

I know that a second chance is not something to take lightly. It is an opportunity that comes with responsibility, and I believe he has the potential to use that opportunity to make meaningful

changes and build a more positive future. I hope he can learn from this experience and continue proving through his actions that he is capable of moving forward in the right direction.

At the end of the day, he is family, and I care about what happens to him. I have seen him try, I have seen him work toward something better, and I do not want that effort or his potential to be overlooked. I sincerely hope he is given the chance to continue the progress he started, with his family standing behind him and supporting him along the way.

Thank you for taking the time to read my letter and consider my perspective. I am writing this because I believe in his ability to grow, I want to see him succeed, and I truly hope he gets the opportunity to build the better future he was working toward.

Amani Garcia

Berliz Florian
116 East Moshulu Parkway South Apt. 64 Bronx, NY, 10458

October 18, 2026

The Honorable Denise L. Cote

United States District Judge

Southern District of New York

500 Pearl Street

New York, NY 10007

RE: United States v. Felix Cuevas, 25 CR 484 (DLC)

Dear Judge Cote,

My name is Berliz Florian and I am one of Felix's younger sisters. As far as my memory can go back to, I've always known my older brother as a positive, kind, and supporting influence in my life. He is like a mentor to me, an advisor, and has always pushed me to be better no matter what. I believe my brother should be granted the opportunity to move forward with his life, grow, and learn from this situation because before he made such a decision that got him into this situation, he was always working hard and trying to be better.

Although there were times when Felix would go off the grid and we wouldn't hear from him for a few, he'd always come back and help out with whatever he could. He's always been a hard worker. Whenever I'd see him, he'd tell me about what he'd do at work and how his shifts went. He'd tell stories and tell me what he learned. He's always had an interest in learning. I'd tell him about school and what I was learning. I can recall a conversation we had when I was trying to decide what colleges I wanted to attend. He'd ask questions about what I wanted to major in and what the pros and cons were to each school I considered. We've even discussed if he'd want to return to school and what he'd be interested in majoring in. Especially since you're never too old to continue learning.

My brother has always been my number one supporter with every hobby I'd get into. From modeling to arts and crafts to even just getting a job, he'd always be there pushing me to keep trying and never give up when things don't work out the first time I try. The best way for me to describe Felix is as my best friend. I can always count on him and whenever I could see him, we'd spend hours telling stories about our lives. He's a very important figure in my life and has always been there for me and the family.

I remember when Felix had begun depending on alcohol and our mother and I would try to urge him to stop because he was just harming himself. So when he went on his journey to sobriety, I was so proud that he was pushing to be better and improve for himself. It's been pretty hard accepting that my brother did what he did and that I can't see him as often as I'd like. There are days where I wish I could just talk to him cause I truly do miss him. I've known my brother all my

life and I know that if he simply is given the chance, the village of our family will help support and guide him down the right path just like he encourages for everyone else. I hope the court can consider his character despite his mistakes and allow him to move forward in a more positive route for his future.

Sincerely,

Berliz Florian

Beralyz Florian
116 East Moshulu Parkway South Apt. 64 Bronx, NY, 10458

October 18, 2026

The Honorable Denise L. Cote

United States District Judge

Southern District of New York

500 Pearl Street

New York, NY 10007

RE: United States v. Felix Cuevas, 25 CR 484 (DLC)

Dear Judge Cote,

I believe my brother deserves a chance to move forward with his life without going to prison because, before this incident, he was a very hardworking person who was always trying to make a living for himself. Every time I heard from him, he seemed to be working somewhere new, and sometimes we could barely keep track of what he was doing because he was always busy working.

He has always been someone our family could depend on when we needed help. If you called him and asked him to do something or be part of a plan, most of the time, he would show up and be there for you without hesitation.

He is a kind and respectful person who treats others fairly and expects that same respect in return. I know that this incident does not represent every part of who he is or the person he has been throughout his life.

I believe he deserves the opportunity to learn from this experience, take responsibility for his actions, and work toward a better future. I hope the court will consider his character, his work ethic, and the support of his family when deciding his future, and give him a chance to prove that he can move forward in a positive direction.

Sincerely,

*Beralyz Florian*

Beralyz Florian

Flora Amador

2712 Yates Ave Bronx NY 10469

October 17, 2026

The Honorable Denise L. Cote

United States District Judge Southern District of New York

500 Pearl Street New York, NY 10007

RE: United States v. Felix Cuevas, 25 CR 484 (DLC)

Dear Judge Cote,

My name is Flora Amador and I am writing to you on behalf of my nephew Félix Cuevas. Myrelationship with him began in 2007 when I moved to New York City. Since that time he was very close to my children and they always spent time together at my house during the school vacations and holidays. Of those moments I keep good memories and many photos. From a very young age, Felix has always been a member of the church and has been involved in its events and activities. He also loves playing basketball and video games.

Felix has always been a loving, respectful, calm and affectionate person, he has also been loved in his community, and a genuine person of good character and helper with all those he has crossed. I can see that he is a stable person who values family life because he has always had stable partners and also is always present in the life of his immediate family even though he is working. Felix always finds time to be present at every family event and has been permanently close to all his cousins. Since he was a child, he has been a great support for his mother during the growth of her two little sisters, taking them to school, taking care of them and supervising them whenever it has been necessary.

In understanding the gravity of these charges, it is important to consider how deeply the sentence could affect Felix. As a consequence, this will disrupt his plan to continue studying and his dream of joining the New York City Fire Department.

I know Felix has been going through a rough patch lately. It is unfortunate that he finds himself in this situation, but he is taken seriously and regrets any harm or inconvenience he has caused. He has been more thoughtful and more deliberate about the choices he will make in the future.

Felix is not a perfect person, but she is good and has a strong support system in our family that will continue to support him as he gets through this. I believe he will make changes in his life that will prevent something like this from happening again, and that he will continue to grow as a good human being.

In conclusion, I respectfully hope that this testimony will be taken into consideration at the time of sentencing, considering the general character of Félix Cuevas, his background, and his potential for positive development.

Respectfully,

*Flora Amador*

Flora Amador

# JAMES W. MAGEE, ESQ., P.C.

ATTORNEY AT LAW

4823 Skillman Avenue | Sunnyside, NY 11104

Tel: (917) 502-0544 | jmageelaw@gmail.com


October 28, 2026

Hon. Denise L. Cote
United States District Judge
United States District Court
Southern District of New York

**Re: U.S. v. Felix Cuevas, 25 Cr. 484 (DLC) — Sentencing**

Dear Judge Cote:

I write in support of Felix Amador Cuevas, whom I represented when he pleaded guilty in state court and entered alcohol treatment. The conduct underlying this federal case preceded that plea, his acceptance of responsibility, and the treatment that led to his sobriety. That sequence does not excuse his conduct, but it bears directly on the person he has become.

I recognize the terrible, irreversible harm caused by drug trafficking. Nothing in this letter is intended to minimize that harm or the seriousness of the offense here. I also appreciate that Your Honor has the matter of equity among defendants to consider in fashioning these sentences.

I write to tell you that Felix took treatment seriously and became one of the genuine success stories of my practice. I am personally very proud of him. I would not write this letter otherwise. I have never before written such a letter in my 20 years of practice. I am a recovering alcoholic, sober for five years, and know that recovery requires sustained effort and accountability. I saw Felix undertake that work.

Felix's girlfriend, Aliannys Hernandez, Lily, was a valuable resource to me as his attorney while he was getting sober. Her involvement gave him meaningful support during a difficult period. She remains a source of stability.

I respectfully ask the Court, in considering the factors under 18 U.S.C. § 3553(a), to weigh the responsibility Felix accepted in state court, the treatment he pursued, and the progress I personally witnessed. I am happy to provide any information and my time to help mitigate Felix's sentence and allow him the best opportunity to continue on the track he was on before he was arrested on this federal indictment.

Thank you for considering my observations.

*James Magee*

James W. Magee, Esq., P.C.
Current State-Court Counsel to Felix Amador Cuevas

Grace Artiles
2423 Fuller Ave Bronx, NY 10461

October 18, 2026

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

RE: United States v. Felix Cuevas, 25 CR 484 (DLC)

Dear Judge Cote,

I, Grace Artiles, am writing this letter in support of my cousin, Felix Cuevas, ahead of his sentencing. I respectfully ask the Court to consider his character, the person he is beyond the circumstances that have brought him before the Court, and the potential he has to grow and make positive changes in his life.

As his cousin, Felix is more than just a relative to me; he is a cherished member of my family and someone I care about deeply. We spent many birthdays, holidays, and vacations together throughout our childhood. We were inseparable, always playing superheroes. Somehow, I always ended up being the villain, and Felix was the one who saved the day. Those memories reflect the bond we have shared throughout our lives and the important place he holds in my heart.

I believe Felix possesses strong moral and ethical values. I understand the seriousness of this matter, and I do not intend to minimize it or excuse his actions. However, I respectfully ask the Court to recognize that one mistake or one difficult chapter in a person’s life does not define their entire character or determine who they can become in the future.

In 2023, Felix learned that I was in a domestic violence relationship after he attended his youngest sister’s birthday party. Upon learning about my situation, he reached out to offer his help and support. Felix helped me create a plan to leave the relationship safely, and his actions played a crucial role in protecting both my daughter and me. Despite my ex-partner’s increasingly violent behaviour and threats against Felix’s life, Felix did not respond with violence or escalate the situation. Instead, he remained calm and chose to de-escalate the conflict. His actions demonstrated restraint, courage, and a genuine concern for our safety. Thanks to Felix’s help, my daughter and I were able to get out of that situation safely, and I will always be grateful to him for that.

This experience showed me that Felix is capable of handling difficult and dangerous situations with thoughtfulness and restraint. It reinforced my belief that he has the ability to learn from his experiences, grow as a person, and make better decisions moving forward. He has a family that loves him, believes in him, and is willing to support him as he works toward a better future. I sincerely hope he will be allowed to demonstrate through his actions that he can make meaningful, positive changes in his life.

It is difficult to see someone I care about deeply face such a serious moment in his life. I sincerely hope the Court will consider the lasting impact its decision may have on Felix and our family. I respectfully ask the Court to extend compassion and consider a sentence that allows him to learn from this experience, grow as an individual, and continue working toward becoming a better man.

Thank you for taking the time to read this letter and consider my perspective. I am grateful for the Court's time, attention, and consideration of my words in support of my cousin, Felix Cuevas.

Respectfully,

*Grace Artiles*

Grace Artiles

Juana Antonia Amador
11 Fisher Ct Apt. 4 White Plains, New York, 10601
October 17,2026

The Honorable Denise L. Cote

United States District Judge

Southern District of New York

500 Pearl Street

New York, NY 10007

RE: United States v. Felix Cuevas, 25 CR 484 (DLC)

Dear Judge Cote,

I am writing this letter as the aunt of Felix Cuevas in support of him and to also share my personal experiences with him. I would like to describe the qualities I have come to know and appreciate about his character.

I was fortunate to live close to my dear nephew during his early childhood, which gave me the opportunity to be part of his life as he was growing up. I remember the day he was born and how much joy he brought to our family. Although we have not seen each other regularly in recent years, the family bond we share remains both strong and important to me. My interactions with him have left me with lasting impressions of his character.

I have always appreciated his caring nature, his unwavering loyalty toward his friends and family, and the warmth he brings to his relationships with the people he loves. As his aunt, one of the qualities that has meant the most to me is the respect and affection he has consistently shown me and the older members of our family. Every time we have seen each other, without mattering how much time has passed since we last seen each other, he has always approach me with warmth, kindness, and respect. These gestures are meaningful to me and reflect the importance he places on family relationships.

I recognize that I have not been present for every chapter of his life, and I do not wish to speak to circumstances I have not personally experienced. I can, however, share the positive qualities I have observed and the genuine affection I have for him as a member of our family.

I respectfully offer this letter to provide the Court with some insight into my personal experience of my nephew Felix Cuevas beyond these proceedings. Thank you for taking the time to consider my perspective.

Respectfully,

*Juana Antonia Amador*

Juana Antonia Amador

Jealean Zapata
11 Fisher Ct Apt. 4 White Plains, New York, 10601
October 17,2026

The Honorable Denise L. Cote

United States District Judge

Southern District of New York

500 Pearl Street

New York, NY 10007

RE: United States v. Felix Cuevas, 25 CR 484 (DLC)

Dear Judge Cote,

I am writing this letter in support of my cousin, Felix Cuevas.

I'm Felix's older cousin so I have known him since he was born. I have cherished memories of growing up together during our early childhood years of us playing with the rest of our other cousins and siblings. One of the few things that have always stood out from Felix to me, is his loyalty to the people he cares about. He has a caring nature toward his family, including his younger siblings and other relatives. He is someone who has always been willing to show up when a friend or family member needed him. No questions asked.

He is someone who is always willing to stand up for others and come to the aid of people he cares about, even when doing so may come at a cost to himself. That is one of his greatest qualities because, to me, this reflects the importance he places on loyalty, friendship, and family. Which are qualities I believe are meaningful and worth recognizing in anyone.

I understand that everyone faces challenges in life, and that the choices we make matter. At the same time, I also believe a person should not be defined by one circumstance or difficult chapter in their life. Everyone has the capacity to reflect, learn, grow, and make better choices moving forward.

As his older cousin, I sincerely hope that Felix will have the opportunity to move forward in a positive direction and build a future that reflects the good qualities I know that he has. I hope he continues to use his loyalty, selflessness, and caring nature for others in ways that are positive to his life and the lives of those around him.

Thank you for your time and consideration.

Respectfully,

Jealean Zapata

Lizbeth Cuevas
116 East Moshulu Parkway South Apt. 64 Bronx, NY, 10458

October 18, 2026

The Honorable Denise L. Cote

United States District Judge

Southern District of New York

500 Pearl Street

New York, NY 10007

RE: United States v. Felix Cuevas, 25 CR 484 (DLC)

Dear Judge Cote,

I am Lizbeth Cuevas, Felix's mother. It is hard for me to believe that my son Felix is going through this situation. My hands are tied as to how I can help him. Felix has always been a hard worker. He prefers the night shifts, which always worries me as to what might happen late at night. Since he was an adolescent, he always went to bed later than the time he was supposed to. When he was a teenager Felix belonged to the youth group at our church. My son is always willing to help others without thinking of the consequences by taking care of someone else's problem.

I understand that he made a mistake by getting involved in the issue at hand, but I also think that Felix needs an opportunity to be able to steer his life in the right direction. I implore Your Honor for clemency on my son's behalf.

Respectfully yours,

*Lizbeth Cuevas*

Lizbeth Cuevas

Yanibel Garcia
431 E 136th Street, Apt 5B
Bronx, NY 10454
October 17, 2026

The Honorable Denise L. Cote

United States District Judge

Southern District of New York

500 Pearl Street

New York, NY 10007

RE: United States v. Felix Cuevas, 25 CR 484 (DLC)

Dear Judge Cote,

My name is Yanibel Garcia, and I am writing in support of my cousin, Félix Amador. I respectfully ask that you consider the loving person I have known since childhood, the meaningful relationships he has with our family, and his potential to build a better future. My hope is to give you a personal understanding of Félix through the experiences and memories we have shared.

Félix's mother and my mother are sisters, but our relationship has always felt closer than simply being cousins. We grew up like siblings, alongside my brother, Danny. So many of my childhood memories include Félix. I remember him as a loving, playful child who enjoyed being around family. We shared laughter, everyday routines, and small moments that became memories I still cherish today.

One memory that always makes me smile is making waffles with ham and cheese together. He loved those waffles. It is a simple memory, but it brings me back to the happiness of our childhood and the closeness we shared. When you grow up alongside someone, those ordinary moments become part of how you know and love them.

We also went to church together every Sunday and participated in church activities. Family and church were consistent parts of our lives growing up. Félix was also extremely intelligent, one of the top students in his class, and well loved by his teachers. I remember someone with the ability to learn, achieve, and connect with others. Those qualities are part of why I continue to believe in his potential.

Our bond continued into adulthood. Two years ago, we went on vacation together and had such a wonderful time. During that trip, I experienced the same respectful, loving person I had known

growing up. I treasure that time because we had the opportunity to enjoy each other's company and create more happy memories as adults.

Félix loves to dance, and he certainly loves to eat. Our family could lovingly joke that he could eat enough for a whole village. He loves lasagna and especially loves his mother's cooking. These details may seem small, but they are part of the person I want you to know: someone who finds happiness in music, food, family, and being together. When I think of Félix, I think of those familiar moments of laughter and affection around the people he loves.

One of the qualities I value most in him is the way he treats my daughter. He treats her like a princess, and as her mother, that means so much to me. He has a loving way with children, and I have seen that through their relationship.

When my daughter was little, she would ask him, "Do you want to be my friend?" It became a sweet joke between them, something that still makes me smile when I remember it

As she has grown older, he has continued to show interest in her life. He calls for her birthday and asks about her. Those gestures matter. They show her that she is remembered and loved, and they show me that the connection they formed when she was small still matters to him. His affection for my daughter is something I have witnessed personally, and it is one of the reasons I speak so sincerely about his caring nature.

Our family has also experienced the pain of losing my brother, Danny. Because the three of us grew up together, his passing affected Félix deeply. Danny was part of our childhood, our memories, and our family bond. I saw how hurt Félix was by that loss, and I know how much those family relationships mean to him.

I recognize that my perspective as his cousin is only one part of what the Court must consider. I am writing to share what I can honestly speak to: the respectful, intelligent, grateful, and loving person I have known throughout my life. My memories do not allow me to speak to every circumstance before the Court, but they do allow me to speak sincerely about his character and the relationships he has maintained.

I respectfully ask that Félix be given another opportunity to move his life in a positive direction. I believe he has the ability to make meaningful changes and use his intelligence and strengths to build a better future. That opportunity would carry responsibility, and my hope is that he will embrace it with care and determination.

Félix has a family who loves him, believes in his potential, and wants to support his progress. I want to see him have the chance to create more positive memories, remain connected to the people who care about him, and take meaningful steps toward a stable and productive life. My belief in him comes from years of knowing him, growing up beside him, and seeing the love he gives to our family.

Thank you for taking the time to read my letter and consider my perspective. I respectfully ask for your compassion and consideration when making your decision about Félix's future.

Respectfully,

*Yanibel Garcia*

Yanibel Garcia